**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL MANATT, et al., : | |
| : | |
| *Plaintiffs,* : | |
| : | Case No.  2:19-cv-01163-JDW |
| v. : | |
| : | |
| UNITED STATES DEPARTMENT OF : | |
| HOMELAND SECURITY, et al., : | |
| : | |
| *Defendants.* : | |

**MEMORANDUM**

Throughout this matter, the U.S. Department of Homeland Security and the U.S. Citizenship and Immigration Service have demonstrated disdain for their legal obligations. They have ignored duties that the Freedom of Information Act imposes on them. They have ignored burdens of proof in this Court. And they have ignored this Court's Orders. As nearly as the Court can tell, DHS and USCIS think that they should get special treatment, either because they are besieged with FOIA requests, because they are part of the Government, or both. But being the Government does not entitle them to special treatment. If anything, the opposite should be true. Government agencies should hold themselves up to the highest standards, as an example of lawfulness, rather than seeking special treatment.

The only thing that saves DHS and USCIS from a worse fate in this case is that Plaintiffs Daniel Manatt and Garen Meguerian have not mustered evidence to prove that this type of conduct is a pattern or practice. The Court will therefore grant summary judgment to DHS and USCIS on that claim. The Court will require DHS and USCIS to submit additional evidence about the search that they conducted. It will also require them to submit several documents for *in camera* review.

And it will hold a hearing at which DHS and USCIS must present testimony from the senior-most official who decided that the agencies did not need to comply strictly with this Court's Order.

## I.     BACKGROUND

### A.     The FOIA Requests

On October 9, 2018, Mr. Manatt and Mr. Meguerian submitted a FOIA request letter to USCIS, which is an "operational component" of DHS. In their request, Plaintiffs request documents relating to the so-called "Zero-Tolerance Policy for Criminal Illegal Entry," which they claim was "announced by the Department of Justice on or about April 6, 2018." (ECF No. 22-3 at 2.) FOIA requires agencies to respond to requests within 20 working days. *See* 5 U.S.C. § 552(a)(6)(A)(i). USCIS did not meet that deadline, though. As of March 2019, USCIS had not responded to Plaintiffs' request.

On September 9, 2019, Plaintiffs submitted a second FOIA request to USCIS that duplicated their initial request. USCIS did not respond in a timely way, so Plaintiffs followed up by letter in October 2019. In a letter dated December 16, 2019, USCIS told Plaintiffs that because the second request duplicated the first request, USCIS would not take any further action on it.

### B.     Procedural History

Plaintiffs filed suit against USCIS and DHS on March 19, 2019. On April 10, 2019, USCIS sent a letter to Mr. Meguerian informing him that it had completed its review of the documents and identified 9,182 responsive pages. But USCIS still did not release any documents or a *Vaughn* Index. On June 17, 2019, Plaintiffs filed an amended complaint. In it, they assert four counts: (1) failure to disclose responsive records; (2) failure to conduct an adequate search for records; (3) declaratory relief for failure to timely produce responsive records; and (4) injunctive relief for failure to implement a FOIA-compliant policy or practice.

On November 4, 2019, USCIS provided Plaintiffs with its first *Vaughn* Index, cataloging documents or portions of documents that it intended to withhold. The following day, USCIS provided Plaintiffs with a new series of records responsive to the FOIA request. In a cover letter, USCIS stated that it identified 9,180 responsive pages. The letter enclosed 6,909 pages in their entirety. USCIS withheld 164 pages in full and 694 pages in part, and it referred 1,413 to DHS for evaluation. Plaintiffs informed USCIS that the *Vaughn* Index was insufficient because it only included vague and general descriptions.

On November 19, 2019, the parties jointly asked the Court for more time to file summary judgment motions. In their motion, they explained that USCIS did not control DHS's response for the documents that USCIS had referred to it and said that USCIS would "urge" DHS to hurry up. (ECF No. 18 at 3.) The Court granted the motion in part and said, "On or before December 20, 2019, DHS shall produce any of the documents designed by USCIS as 'Referred to DHS for direct release' for which DHS has not articulated a specific legal basis for withholding" and required DHS and USCIS to provide an updated *Vaughn* index to Plaintiffs the same day. (ECF No. 19.)

USCIS produced an amended *Vaughn* Index. However, DHS did not comply with the Court's Order requiring production of documents that USCIS referred to it. In their opposition to Plaintiffs' summary judgment, Defendants conceded that they "did not meet the Court ordered deadline to produce documents referred to it by USCIS or to produce a Vaughn Index." (ECF No. 25 at 7.) Defendants have never filed an update about the production of those documents. On April 1, 2020, Defendants reported to the Court by letter that DHS "continues to work diligently to complete a Vaughn Index of documents referred to it by USCIS for its review." That is the last information that the Court has.

The parties have filed cross-motions for summary judgment. Plaintiffs argue in their motion that USCIS failed to implement a FOIA-compliant policy or practice and failed to conduct an adequate response for records, that DHS violated the Court's Order compelling the release of documents, and that FOIA does not authorize USCIS's decision to withhold documents. Defendants' motion argues that FOIA authorized USCIS to withhold document and that DHS was working on releasing the documents that USCIS referred to it.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

**III.   ANALYSIS**

    **A.   USCIS Has Not Complied With FOIA's 20-day Requirement**

FOIA requires that an agency make a determination on a FOIA request within 20 business days after receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). An agency may extend its response time in case of "unusual circumstances," by no more than 10 business days provided that it sends the "written notice." 5 U.S.C. § 552(a)(6)(B)(i). It is undisputed that USCIS did not respond to Plaintiffs' FOIA request in the time that the statute required. In fact, it took over eight months for USCIS to respond to Plaintiffs' initial FOIA request, after Plaintiffs filed this lawsuit. In the Opposition to Plaintiffs' Motion, Defendants point to the burden of complying with FOIA requests, noting that USCIS receives approximately 20% of all FOIA requests across federal agencies, totaling more than 190,000 requests in 2019. In an effort to be "fair and expeditious" (ECF No. 25-3 at ¶ 8), USCIS processes FOIA requests on a first-in, first-out basis.

USCIS's conduct violates FOIA. Congress made a choice to include in the statute an express 20-day requirement, with limited exceptions. No doubt, the proliferation of electronic records, growth of the federal government, and a more politicized environment make compliance with that requirement herculean. But the challenge of complying with FOIA is not an excuse for non-compliance. The law applies to federal agencies like USCIS just like it does to everyone else. One might expect Government agencies to hold themselves to a higher standard. But in this case, one would be disappointed. If circumstances have made FOIA compliance impossible, then USCIS's remedy is to ask Congress to change the law. Neither USCIS nor any other federal department or agency can modify or ignore a Congressional enactment, regardless of the difficulty of complying.

### B.      USCIS Has Not Demonstrated That It Conducted An Adequate Search

Under FOIA, an agency has a duty to conduct a reasonable search for responsive records. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007). The agency has the burden of proving the reasonableness of its search. *See Powell v. United States Dep't of Treasury Office of Foreign Assets Control*, 317 F. Supp. 3d 551, 554 (D.D.C. 2018) (citing *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). The "relevant inquiry is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Abdelfattah*, 488 F.3d at 182 (3d Cir. 2007) (emphasis in original) (quote omitted). An agency can demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials… were searched." *Id.* (quotes omitted). "The adequacy of a search focuses on the appropriateness of the search methods used and not on what the search produces or does not produce." *Jackson*, 267 F. Supp.3d at 622 (internal quotations omitted).

To demonstrate adequacy, "the agency's affidavit must (1) contain reasonable detail; (2) set forth the search terms used; (3) describe the type of search performed; and (4) confirm that all files likely to contain responsive material were searched." *Id.* (citing *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp.2d 749, 766 (E.D. Pa. 2008)). "Conversely, the requesting party may defeat the agency's motion for summary judgment by producing evidence that raises a substantial doubt that the search was adequate." *Cozen O'Connor*, 570 F.Supp.2d at 766 (citing *Valencia–Lucena v. U.S. Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999)). A "well defined request coupled with facts, not speculation, that indicates materials do exist and were overlooked

raises a substantial doubt whether an adequate search was performed. *Id.* (citing *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 314 (D.C.Cir.2003).

USCIS has not satisfied its burden to show that it conducted an adequate search. It submitted a declaration from Jill Eggleston. But Ms. Eggleston's declaration does not describe the scope or methods of USCIS's search for responsive documents. It provides no search terms, does not identify the custodians or systems searched, or provide any other information about USCIS's search methodology. Instead, Ms. Eggleston's declaration focuses on the results of the search— the number of documents identified and the process used to review those documents. But that information does not answer the question of whether the search was reasonable. The Court has no way to assess whether the documents that USCIS located are all, most, some, or only a small portion of the universe of responsive documents. Merely reciting the number of documents identified is not enough to meet the agency's burden to show that its search was reasonably calculated to uncover all relevant documents.

This failure alone is enough for the Court to deny summary judgment. But there's more. Plaintiffs have pointed to facts indicating that materials exist, in the form of missing email attachments. USCIS does not deny the possibility of missing documents. In her declaration, Ms. Eggleston says that USCIS was still working "to determine whether any attachments were inadvertently left out of the production." (ECF No. 25-3 at ¶ 10). She then states that "[i]f there are any missing attachments in the production, USCIS will work to locate those attachments and produce them, with any necessary redactions, to plaintiff." (*Id.* at ¶ 11). Plaintiffs' evidence, and USCIS's apparent concession that documents might be missing, further calls into question the adequacy of USCIS's search.

The Court will not, at this point, conclude that USCIS's search was inadequate, though that possibility exists. Instead, the Court will give USCIS an opportunity to supplement the record with additional detail about the search that it conducted. Plaintiffs can then renew their motion if the additional detail does not satisfy them that USCIS has conducted an adequate search.

### C. Failure to Implement a FOIA Compliant Policy

The Third Circuit has not endorsed a "policy-or-practice" claim under FOIA. However, the D.C. Circuit has found that these claims arise out of a district court's "equitable power to 'enforc[e] [FOIA's] terms.'" *Am. Ctr. for Law & Justice v. Federal Bureau Of Investigation.*, No. CV 19-2643 (RC), 2020 WL 3605624, at *3 (D.D.C. July 2, 2020) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). To bring such claim, a plaintiff "must allege a [policy or practice] amounting to a persistent failure to adhere to FOIA's requirements and that [this practice] will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 895 F.3d 770, 780 (D.C. Cir. 2018); *see also Nat. Res. Def. Council, Inc. v. Envtl. Prot. Agency*, 383 F. Supp. 3d 1, 13 (D.D.C. 2019).

Even assuming that the Third Circuit would adopt such a claim, Plaintiffs have not mustered evidence to support it here. First, Plaintiffs point to USCIS's failure to respond to their second FOIA request. That request was duplicative of the first request, though. USCIS's handling of duplicative requests, including its delay in responding, does not shed light on how it handles all requests. Second, Plaintiffs point to at least 74 other lawsuits against USCIS that allege USCIS did not respond to FOIA requests within the statutory time limit. While the Court can take notice of the fact that those lawsuits were filed, it has no basis to determine whether or not the allegations

are correct. Ultimately, Plaintiffs' list of cases is just that—a list of cases. It provides the Court with no information about what USCIS did in each of those cases.

The Court suspects that USCIS does, in fact, have a pattern or practice of violating FOIA. In her declaration, Ms. Eggleston reports that USCIS handles FOIA requests on a first-in, first-out basis. It might be that USCIS does so in a way that complies with FOIA's deadlines. But, given the time it took to respond to Plaintiffs, it seems likely that USCIS is taking more than its allotted time for other cases, too. The Court does not have the evidence before it to make that conclusion in this case. USCIS should use this opinion as a warning to correct its conduct and come into compliance with the statute. Future plaintiffs might muster more evidence about USCIS's conduct and prevail where these Plaintiffs fall short.

###    D.    USCIS Justified Its Decision To Withhold Many, But Not All, Documents

Under FOIA, the "basic policy [is] that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, (1976); *see also Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995) ("FOIA creates a presumption favoring disclosure" of Government documents). FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). In the absence of an applicable exemption, the agency must disclose the requested information. *Cozen O'Connor*, 570 F. Supp. 2d at 764. The "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted).

A district court reviews an agency's use of a FOIA exemption to withhold documents *de novo*. 5 U.S.C. § 552(a)(4)(B); *Wolk Law Firm v. United States of Am. Nat'l Transportation Safety Bd.*, 392 F. Supp. 3d 514, 520 (E.D. Pa. 2019). The agency may sustain its burden under FOIA by submitting a detailed explanation which "describe[s] the material withheld and detail[s] why it fits

9

within the claimed exemption." *Wolk*, 392 F.3d at 520 (quoting *McDonnell*, 4 F.3d at 1241); *see also Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 922 (3d Cir. 1981). The agency can satisfy that burden by submitting of a *Vaughn* Index, "which is a detailed affidavit correlating the withheld documents with the claimed exemptions." *Cozen O'Connor*, 570 F. Supp. 2d at 765. A *Vaughn* Index "must consist of one comprehensive document, adequately describe each withheld document or redaction, state the exemption claimed, and explain why each exemption applies." *Id.* (citing *Afshar v. Dep't of State,* 702 F.2d 1125, 1144–45 (D.C. Cir. 1983)). If the index does not describe the withheld records with enough detail, the court "may order the agency to submit copies of the withheld materials for *in camera* review. *Wolk*, 392 F. Supp. 3d at 520 (citing 5 U.S.C. § 552(a)(4)(B)); *Cozen O'Connor*, 570 F. Supp. 2d at 765.

Plaintiffs challenge USCIS's decision to withhold or redact 43 documents. For each, USCIS relies on FOIA Exemption 5 and invokes the deliberative process privilege. That exemption protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "The deliberative process privilege protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Leopold v. Office of Dir. of Nat'l Intelligence*, No. CV 16-2517 (CKK), 2020 WL 805380, at *4 (D.D.C. Feb. 18, 2020) (citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)). "This privilege is intended to protect the decision-making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Id.* (internal citations and quotation marks omitted). "Without protection from disclosure, officials would be reluctant to freely exchange ideas and proposed policies." *Cozen O'Connor*, 570 F. Supp. 2d at 780 (citing *Klamath,* 532 U.S. at 8–9, 121 S.Ct. 1060; *Wolfe v. Dep't*

*of Health and Human Serv.,* 839 F.2d 768, 776 (D.C.Cir.1988)). "Thus, the privilege fosters open and frank discussion among those who contribute to and make decisions." *Cozen O'Connor*, 570 F. Supp. 2d at 780.

To determine whether the deliberative process privilege applies, the Court must determine whether the material at issue is "both pre-decisional and deliberative." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988). "A document is pre-decisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). A document is deliberative in nature if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). The exemption covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* Such documents "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Id.*

Plaintiffs contend that many of the documents are not pre-decisional because they post-date the adoption of the Zero Tolerance Policy. Their argument conflates the adoption of a policy with an agency's decisions. While adoption of a policy is a distinct event, agencies make granular decisions every day. Here, USCIS made routine decisions about how to respond to inquiries from Congress, the press, and the public. Decisions about how to respond to those day-to-day matters are agency decisions subject to the deliberative process privilege, even if they post-date the adoption of a policy.

Plaintiffs' arguments about what constitutes a deliberation for purposes of the Exemption also misses the mark. While there are no cases within this Circuit that specifically address this issue, the "overwhelming consensus" in the District Court for the District of Columbia is "that the [deliberative process] privilege protects agency deliberations about public statements, including the use of talking points." *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018); *see also Leopold*, 2020 WL 805380, at *6 (collecting cases); *Comm. on Oversight & Gov't Reform, United States House of Representatives v. Lynch*, 156 F. Supp.3d 101, 112 (D.D.C. 2016) (withheld documents that revealed the Department's internal deliberations about how to respond to press and Congressional inquiries were protected by the deliberative process privilege); *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018) (emails generated as part of the collaborative process of determining how to field questions from Congress about matters that bear on agency policy were protected by the deliberative process privilege). "As long as communications are pre-decisional and deliberative, internal agency communications about public statements can be protected by the deliberative process privilege." *Leopold*, 2020 WL 805380, at *6. Thus, documents about potential statements to Congressional inquiries, press inquiries, or public communication are all deliberative, even if they do not relate to the adoption of a "Policy." These include deliberations in order to prepare for inquiries that someone might make but has not yet made.

With these principles in mind, the Court concludes that Defendants have satisfied their burden of establishing that Exemption 5 applies for the following documents:

| Document Nos.[1] | Reason |
|---|---|
| 5, 25, 26, 27, 33, 47, 88, 106, 116, 122, 129, 136, 147, 150, 151, 152 | Pre-decisional deliberations about communications with Congress |

---

[1] These Document Numbers are based off of the numbering system that Defendants establish in ECF No. 25-9.

12

| 13, 38, 49, 53, 83, 104, 127 | Pre-decisional deliberations about communications or potential communications with press |
|---|---|
| 126, 128, 135 | Pre-decisional deliberations about communications with members of public |
| 81 | Pre-decisional deliberations about communications with White House |
| 12, 18, 57, 61, 119 | Pre-decisional deliberations about preparations of reports or other documents for public release |

However, for certain documents, the Court cannot determine whether Exemption 5 applies even after reviewing the documents and the *Vaughn* Index: 14 (unclear if it is deliberative); 15 (unclear if it is pre-decisional); 30 (unclear if it is pre-decisional); 35 (unclear if it is deliberative); 50 (unclear if it is deliberative or pre-decisional); 93 (unclear if it is deliberative); 105 (unclear if it is deliberative); 137 (unclear if it is deliberative or pre-decisional); and 146 (unclear if it is deliberative or pre-decisional). The Court will review these documents *in camera*.

### E.     DHS Has Not Complied With This Court's Order

DHS admits that it has not complied with this Court's Order directing it to produce the documents that USCIS referred to it. That was true as of April 2020, and as far as the Court knows, it remains true. To justify its noncompliance, DHS submitted a Declaration of James V.M.L. Holzer, DHS's Deputy Chief Freedom Information Act Officer. In his Declaration, Mr. Holder reports that he was "provided with the Court's Order" and that DHS was "unable to meet the Court ordered deadline." (ECF No. 23-6 at ¶¶ 4-5.) He then goes on to offer a number of excuses about how busy DHS is responding to FOIA requests.

The problem for DHS and Mr. Holzer is that DHS was not free to ignore this Court's Order. If DHS could not comply with the Court's Order, then its remedy was to show good cause and ask for more time. Federal Rule of Civil Procedure explains that when an act "must be done within a specified time, the court may, for good cause, extend the time …." Fed. R. Civ. P. 6(b)(1). DHS never filed such a motion. It just granted itself an extension. Even worse, in Mr. Holzer's

13

Declaration, he stated that DHS needed an additional 45 days to comply with the Court's Order. But as of April 1, 2020, DHS still had not complied. So it failed to meet even its own extended deadline. Almost all of this happened before the Covid-19 outbreak that might have slowed DHS's compliance. In addition, DHS did not submit Mr. Holzer's Declaration to the Court until January 9, 2020, weeks after the deadline for compliance. Rule 6 explains that, if a party seeks an extension of a deadline after the deadline has passed, it must show that it "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). DHS has made no such showing. It hasn't even tried.

The Court finds DHS's approach here unacceptable. Neither private litigants nor Government agencies are free to disregard this Court's Orders. It is not enough that DHS tried hard to comply with the Court's Order. When it comes to Orders of the Court, the maxim must be: "Do. . . . There is no try." THE EMPIRE STRIKES BACK (20th Century Fox 1980).[2] If litigants—private or governmental parties—need more time to comply with a Court Order, they have to ask. They cannot take. The Court will conduct a hearing to determine what remedy is appropriate for DHS's noncompliance with the Court's Order. At that hearing, the Court expects to hear testimony from the most senior DHS official who decided whether and how to comply with this Court's Order.

## IV. CONCLUSION

DHS and USCIS are besieged with FOIA requests. Compliance is hard, if not impossible. But this Court cannot permit any litigant before it to ignore applicable statutes or Court Orders just because compliance is difficult. And, the Court expects the Government to hold itself to the highest possible standard as an example for its citizens. For the reasons stated, the Court will grant

---

[2] The omitted part of the quote is "Do not." But that is not an option when it comes to Court Orders.

15

Defendants' motion for summary judgment as to the policy-and-procedure claim and otherwise deny the pending summary judgment motions. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

July 20, 2020